IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| TODRICK MORRIS | § | |
| v. | § | CIVIL ACTION NO. 5:20cv36 |
| DANIEL HINES, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
ON MOTIONS FOR SUMMARY JUDGMENT OF NURSE TARA ADAMS
AND NURSE JOSEPHINE ROPELLA

The Plaintiff Todrick Morris, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. This Report concerns the motions for summary judgment filed by Nurse Tara Adams and Nurse Josephine Ropella.

**I. Background**

Plaintiff's amended complaint (docket no. 40) is the operative pleading in the lawsuit. In his complaint, Plaintiff states on September 19, 2019, shortly after midnight, he started a fire on the outside of his cell, inside the food slot box on his cell door. He explains that he wanted to have a captain or lieutenant come to the area because Sgt. Hines and Officers Harcrow, Kelly, and Hilliard had been refusing his daily meals and had refused his evening meal for no reason the evening before.

While the fire was burning, Plaintiff states that he tried to ask these four officers to summon a ranking officer, but they all laughed and told him that he had nothing coming and that they had "a surprise or something" for him. They huddled up in a circle on the side of Plaintiff's cell door while Officer Kitchell watched from the picket. Sgt. Hines and Officers Harcrow, Kelly, and Hilliard stood

there talking for about three to four minutes, and then Sgt. Hines and Officer Harcrow went to the sallyport to talk to a female officer. These three officers watched while Officers Kelly and Hilliard approached Plaintiff's cell door. Officers Kelly and Hilliard looked inside the food slot to make sure that the fire was still burning and then asked Plaintiff "are you ready?" After looking back to the sallyport for approval, Officer Hilliard sprayed flammable chemical agents through the fire in the food slot at Plaintiff, causing an explosion and catching Plaintiff's clothing, bedding, and personal property on fire. Plaintiff tried to remove his burning clothing, and Officer Kelly then sprayed his canister of chemical agents through the food slot, re-igniting the explosion and burning Plaintiff on his arms, right hand, chest, and stomach.

Plaintiff states Officer Kelly then got an igloo of water and threw it into the cell to put out the fire. Officer Hilliard got on his radio and initiated an ICS (Incident Command System) report, falsely stating that Plaintiff had cut himself when he had never cut or attempted to cut himself or anyone else. Sgt. Hines and a female correctional officer came over with a video camera and Sgt. Hines briefed the video camera with the false statement that Plaintiff had tried to cut himself, and this is why chemical agents were used.

Plaintiff asserts that he told Sgt. Hines he had several injuries including burns and he needed medical care. Nurse Tara Adams and another nurse came to Plaintiff's cell door and Plaintiff told them he was in pain and had injuries consisting of severe burns to his forearms, right hand, stomach, and chest, and that he needed medical treatment. Nurse Adams and the unknown nurse told Sgt. Hines to bring Plaintiff to the medical triage in the 12 Building hallway. Plaintiff was escorted there on video.

At triage, Plaintiff states he told Nurses Ropella, Adams, and the unknown nurse that he was in pain and had burns on his forearms, hand, stomach, and chest. However, he complains the nurses looked at his forearms, right hand, stomach and chest and verified the burns, but they then medically cleared him and released him to security without providing any medical treatment or doing anything to relieve the pain. Photographs were taken of his injuries and he was taken to a cell where the use of force was terminated and the video camera shut off.

Plaintiff states he was left in the cell, in pain from the burns and chemical agents, for about eight hours. When the pain became almost unbearable, he asked to speak to the unit mental health therapist and showed her his injuries. She told him that she would notify the medical department, which she did. Plaintiff was taken to the medical department where he was seen and examined by medical provider Jamie Martin. She cleaned and treated the burns on his arms, right hand, stomach, and chest; however, Plaintiff states he now has permanent scars on his arms, right hand, stomach, and chest.

## II. The Motions for Summary Judgment

In her motion for summary judgment, Nurse Adams asserts Plaintiff did not exhaust his administrative remedies. She contends Plaintiff never filed a grievance against her, attaching an affidavit stating she never received a grievance from Plaintiff, she is not aware of any grievance in which she was named, and she was never notified that Plaintiff filed a grievance relating to the events of September 19, 2019.

In her motion for summary judgment, Nurse Ropella maintains that while Plaintiff filed grievances against the officers involved in the use of force, he did not file any grievances relating to his claims against her. She attaches a copy of Plaintiff's grievance file as summary judgment evidence. This grievance file shows that Plaintiff filed two grievances against the officers involved in the incident (docket no. 81-1, pp. 21, 43), but no grievances complaining about the medical care which he received from nurses or medical providers.

Plaintiff, through appointed counsel, filed a response to Nurse Ropella's motion. This response contends that under Fifth Circuit precedent, a prisoner is not required to identify specific defendants but rather to alert prison officials of the existence of a problem. He states that he "provides a detailed account of the incident that formed the basis of his federal court complaint, and in these grievances he specifically references 'medical staff.'" Thus, Plaintiff reasons that he adequately exhausted his administrative remedies.

Nurse Ropella filed a reply arguing that Plaintiff's references to "medical staff" in his grievance were not in the context of complaining about the medical care he received, but using the medical exams to try to show that the officers involved tried to cover up the incident. Nurse Ropella

3

asserts that Plaintiff did not grieve the issue of inadequate medical care forming the basis of his claim against her.

### III. The Summary Judgment Evidence

Step One Grievance no. 2022220016621, signed by Plaintiff on October 2, 2019, reads as follows:

> I inmate/offender Todrick Morris #854732 personally files this grievance against the Telford Unit 12 Building Card, second shift, Captain Beard, Sgt's D. Hines, C. Harcrow, Officers B. Kitchell, J. Kelly, and one unidentified male Caucasian officer.
>
> September 19, 2019, at approximately 1:00 am hours and at 12 Building F Pod, 4 Cell, Hines and Harcrow personally ordered / instructed Kelly and the unidentified Caucasian male officer to retaliate against me and utilize unnecessary / excessive and improper force on me, in that they both ordered / instructed Kelly and the unidentified Caucasian male officer to administer chemical agents into my cell thru my food slot box which had a visible burning fire in it. The unidentified Caucasian male officer administered the chemical agents into my cell thru the food slot box which had a visible burning lit fire, causing a fire, explosions which caught my clothing and cell on fire and which caused burns to my forearms, chest, stomach, and right index finger. This was done for no justifiable reason and solely out of retaliation because I had refused to relinquish the food slot box trying to speak to a lieutenant in regards to my dinner meal which I was being denied.
>
> However, Beard, Harcrow, Hines, Kelly, Kitchell, and the unidentified Caucasian male officer falsified / fabricated statements, paperwork saying I attempted or did cut myself when I did not. There were no cuts identified on me by medical staff during the use of force exam directly following the use of force.

The response to this grievance stated that Plaintiff's concerns regarding documented use of force no. M-08109-09-19 had been reviewed by unit administration and forwarded to the Office of the Inspector General for further review, and no further action is warranted at this time.

In his Step Two appeal of this grievance, Plaintiff complained that the answer to his Step One grievance "purports review but does not give actual redress" and is an effort to whitewash the officers' actions. He asks for a "thorough investigation by this office at Step Two." The response to this grievance appeal states that the issue has been reviewed by the Office of the Inspector General and that office determined that there was insufficient evidence to warrant opening a case.

Step One grievance no. 2020013554, signed by Plaintiff on September 20, 2019, reads as follows:

>I inmate / offender Todrick Morris, #854732, personally files this grievance against the Telford Unit, 12 Building, card second shift, Sgt's C. Harcrow, D. Hines, and Officers J. Kelly, B. Kitchell, one unidentified Caucasian male officer (assigned to F Pod).
>
>September 19, 2019, at approx. 1 am and at 12 Building, F Pod, 4 Cell, Harcrow and Hines ordered / instructed the unidentified Caucasian male officer to utilize unnecessary / excessive and improper force on me in that they both instructed him to administer chemical agents into my cell for no justifiable reason through the tray slot box on my cell door which had a visible fire burning inside of it.  Likewise, the unidentified Caucasian male officer administered chemical agents thru the visible fire inside the food slot box into my cell for no justifiable reason, causing an explosion like fire to catch onto my clothing, etc., which caused serious injury to me, namely burns to my stomach, throat area, both arms, and right finger.  Furthermore, Harcrow, Hines, Kelly, Kitchell, and the unidentified Caucasian male officer, all conspired and participated together in trying to cover up the unnecessary / improper force that was used in that they all stated that I had attempted suicide by cutting myself with a razor when in fact I had not.  No cuts were found, documented, or treated following this use of force, only the burns were found by medical.
>
>Note: This grievance is not redundant to the grievance I filed on an incident which occurred earlier in the same night.

The response to this grievance says that Major Use of Force M-08109-09-19 was reviewed by the use of force staff at the unit level, but due to the nature of the allegations, the grievance was forwarded to the Office of the Inspector General for review.  There does not appear to be a Step Two appeal of this grievance.  None of the other grievances attached to the motion for summary judgment pertain to the incident of September 19, 2019.

**IV. Discussion**

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997e, which provides as follows:

>No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court.  Jones v. Bock, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004).  Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules.  Woodford v. Ngo, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  This requirement means mere "substantial compliance" with administrative

5

remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir. 2010).

All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. Johnson, 385 F.3d at 515. This means that in order for prisoners of the Texas Department of Criminal Justice - Correctional Institutions Division to exhaust an issue properly, the issue must be presented in a Step One grievance and then appealed to Step Two. New issues cannot be raised for the first time in a Step Two grievance appeal and only one issue per grievance may be presented. Randle v. Woods, 299 F.App'x 466, 2008 U.S. App. LEXIS 24138, 2008 WL 4933754 (5th Cir., November 19, 2008), *citing* Woodford, 548 U.S. at 92-93 *and* Johnson, 385 F.3d at 515; *see also* TDCJ Offender Orientation Handbook, February 2017, p. 74 (inmates may present only one issue per grievance) (available online at https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf). Furthermore, the district court may not excuse failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison Litigation Reform Act, even to take "special circumstances" into account. Ross v. Blake, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016).

The Fifth Circuit has stated that the exhaustion requirement must be interpreted in light of its purposes, which include the goal of giving prison officials "time and opportunity to address complaints internally." Johnson, 385 F.3d at 516, *citing* Porter v. Nussle, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Thus, a grievance is considered sufficient to the extent it "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." Johnson, 385 F.3d at 517. The amount of information necessary depends to some extent on the type of problem about which the prisoner complains. In this regard, the Fifth Circuit explained as follows:

> If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know—and a prisoner could ordinarily be expected to provide—details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter. In contrast, a grievance in which an inmate says that his cell is habitually infested with vermin, or that the prices in the commissary are too high, could adequately alert administrators to the problem whether or not the grievance names anyone. *Compare* Curry v. Scott, 249 F.3d 493, 505 (6th Cir.2001) (holding that a grievance specifically complaining of a beating at

>the hands of one guard did not suffice to exhaust a failure-to-protect claim against another guard, not mentioned in the grievance, who stood by and watched), *with* Brown v. Sikes, 212 F.3d 1205, 1207–10 (11th Cir.2000) (holding that a prisoner who knew only that he had not received prescribed medical equipment had exhausted his claim, notwithstanding that his grievance did not name anyone).

Johnson, 385 F.3d at 517.

The summary judgment evidence shows that while Plaintiff filed grievances concerning the alleged use of force, he did not complain in any grievance that he was rendered inadequate medical care by nurses or other members of the medical staff. Specifically, he does not complain that he was refused medical treatment after the incident of September 19, 2019. While it is true that the grievances filed by Plaintiff mentioned the medical staff, they were clearly insufficient to give prison officials a fair opportunity to address Plaintiff's complaint that the nurses refused to give him medical treatment after the incident.

In addition, the grievances filed by Plaintiff concerned the use of force, and he cannot raise multiple issues in one grievance. Randle, 299 F.App'x at *467; *see also* Bagby v. Karriker, civil action no. 6:12cv266, 2013 U.S. Dist. LEXIS 56525, 2013 WL 1644497 (E.D.Tex., March 27, 2013), *Report adopted at* 2013 U.S. Dist. LEXIS 54289, 2013 WL 1644337 (E.D.Tex., April 16, 2013), *appeal dismissed as frivolous* 539 F.App'x 468, 2013 U.S. App. LEXIS 18104, 2013 WL 4573601 (5th Cir., August 29, 2013) (grievance concerning disciplinary case did not exhaust claim of excessive force even though the disciplinary case and the alleged excessive force involved the same incident). Because none of the grievances filed by Plaintiff involve the claims he raises against the nurses in this lawsuit, he did not exhaust his administrative remedies against them, and the motions for summary judgment filed by Nurse Adams and Nurse Ropella should be granted.

**V. Conclusion**

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Burleson v. Texas Department of Criminal

Justice, 393 F.3d 577, 589 (5th Cir. 2004). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. Id., *citing* Allen v. Rapides Parish School Board, 204 F.3d 619, 621 (5th Cir. 2000).

The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. Boudreaux v. Swift Transportation Co., Inc., 402 F.3d 536, 540 (5th Cir. 2005); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Prison Legal News v. Livingston, 683 F.3d 201, 211 (5th Cir. 2012).

Summary judgment may properly be granted where the competent summary judgment evidence shows that the prisoner failed to exhaust his administrative remedies. Stout v. North-Williams, 476 F.App'x 763, 2012 U.S. App. LEXIS 7579, 2012 WL 1292766 (5th Cir., April 16, 2012); Tuft v. Texas, 410 F.App'x 770, 2011 U.S. App. LEXIS 434, 2011 WL 72198 (5th Cir., January 7, 2011). A review of the pleadings and summary judgment evidence in this case shows that the Defendants Nurse Adams and Nurse Ropella are entitled to judgment as a matter of law because the Plaintiff Todrick Morris did not properly exhaust his administrative remedies as to his claims against them. The claims against the nurses should be dismissed without prejudice for failure to exhaust. Bargher v. White, 928 F.3d 439, 447 (5th Cir. 2019) (failure to exhaust warrants dismissal without prejudice).

RECOMMENDATION

It is accordingly recommended that the motions for summary judgment filed by Nurse Adams (docket no. 67) and Nurse Ropella (docket no. 81) be granted and the claims against these Defendants dismissed without prejudice for failure to exhaust administrative remedies.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found.

An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections.  See Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error.  Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**SIGNED this 27th day of April, 2022.**

*/s/ Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE